Benjamin TRAPNELL, Individually and
as Next Friend of Nicholas Trapnell, a
Minor and Pollyann Haugh, Appel-
lants,

v.

JOHN HOGAN INTERESTS, INC.,
d/b/a First Foods Company,
Inc., Appellee.

No. 13–90–438–CV.

Court of Appeals of Texas,
Corpus Christi.

April 25, 1991.

Rehearing Overruled June 12, 1991.

Russell Manning, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellants.

Randell A. Kocurek, Brown, Slim, Wise & White, Houston, for appellee.

Before NYE, C.J., and HINOJOSA and BENAVIDES, JJ.

## OPINION

HINOJOSA, Justice.

Appellants, Benjamin Trapnell and others (Trapnell), complain of the trial court's granting of a summary judgment in favor of appellee, John Hogan Interest, Inc., D/B/A, First Foods Company, Inc. (First Foods). Benjamin Trapnell is suing First Foods and others for damages arising out of the death of Susan Trapnell, his wife. In this suit Trapnell alleges that sulfite poisoning from Potato White, a product made by First Foods, caused his wife to suffer a fatal anaphylactic shock or asthma attack. We hold that the trial court erred in granting First Foods'[1] motion for summary judgment. We reverse and remand.

The facts and allegations forming the basis of this suit as reflected in appellant's petition and brief are set forth below. Appellant alleged that appellee was in the business of marketing Potato White, a food additive containing sulfites, and that this product was sold to the Officer's Club at the Corpus Christi Naval Air Station. Susan was very sensitive to sulfites, and experienced an asthmatic reaction whenever she ate foods containing sulfites.[2]

On August 5, 1984, Susan, Benjamin, and their child went to the Officer's Club at the Corpus Christi Naval Air Station to enjoy a meal. In order to avoid sulfite poisoning, before eating, Benjamin asked Roberto Mangohig, one of the cooks, whether any potato whiteners had been used in the preparation of the fruit salad. He said no. Relying on this information, Susan went through the buffet, and returned to their table with fruit salad, apple pie filling, hash browns, and other foods not suspected of containing sulfites.

Several minutes after beginning to eat, Susan noticed tightness in her lungs, a feeling similar to having an elastic band around one's chest. As her symptoms rapidly progressed from tightness in her chest, to slight difficulty in drawing a breath, she went to the hallway outside the Officer's Club. She then began suffocating to death. Benjamin, well aware that his wife was experiencing a massive anaphylactic shock, twice injected her with epinephrine, a drug used to counteract the asthmatic response. An emergency medical team was called and Susan Trapnell was taken to a hospital. She lapsed into a coma, from which she never regained consciousness, and died five days later.

Trapnell filed suit in State District Court against appellee and others on May 22, 1986, alleging negligence, Deceptive Trade Practices, strict liability, and breach of warranty. Trapnell's theory was that First Foods' product, Potato White, was added to the fruit salad and caused Susan's death. Trapnell also filed suit in the United States District Court on December 22, 1986, against the United States Department of the Navy under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1989). In this suit[3] Trapnell claimed the Navy was negligent in using sulfites

---

1. This appeal is primarily concerned with First Foods. The other defendants are the producers and distributors of other food products suspected of containing sulfites. They are not directly involved with the issues before us.

2. Sulfites are chemical compounds used to preserve and process food. These chemicals are known generically as potato whiteners. Sulfites may provoke an anaphylactic shock or asthmatic attack in certain sensitive individuals. These chemicals may react quite rapidly when ingested in the mouth or gastrointestinal tract if they are used to preserve fruit. In such a case the sulfites are not chemically bound to the fruit, and the asthma attack may occur within minutes.

3. The Federal action was stayed pending the outcome of the State action. The State court then abated its proceedings to allow the federal court to try the case first. The conflict was resolved by this Court in *Trapnell v. Hunter*, 785 S.W.2d 426 (Tex.App.—Corpus Christi 1990, orig. proceeding) where we granted Trapnell's writ of mandamus compelling the State trial court to set aside its order of abatement.

and by failing to warn Susan Trapnell of the sulfites in her food.

Appellee then filed a motion for summary judgment in the State Court. The trial court granted the motion for summary judgment on the basis that appellee's summary judgment evidence established as a matter of law that First Foods' product, Potato White, did not cause Susan's death.

After summary judgment was granted, the United States District Court lifted its stay and Trapnell's claims against the Navy under the FTCA were tried to the court. The court ruled for the Navy, holding that adding sulfites to foods is a discretionary function, thus the Navy was not liable under the FTCA. *See* 28 U.S.C. § 2680(h) (1989). The court also ruled that the Navy was not liable to Trapnell for a failure to warn because the Navy cooks did not add sulfites to the fruit salad.

Before reviewing the propriety of the summary judgment, we address appellee's argument that appellant is estopped from relitigating the federal district court's factual finding that sulfites were not added to the fruit salad. After this appeal was perfected, appellee filed a motion to take judicial notice of an adjudicative fact: the Federal District Court's finding that the Navy cooks did not add sulfites, more specifically, Potato White, to the fruit salad. *See* TEX.R.CIV.EVID. 201. The purpose of this motion to take judicial notice is to compel a ruling by this Court that appellant is collaterally estopped and precluded from relitigating the issue of whether sulfites were added to the fruit salad and caused Susan's death. Collateral estoppel was not a basis for the trial court's ruling on appellee's motion for summary judgment. Nevertheless, appellee argues that error, if any, in

the granting of the summary judgment is harmless because it is established as a matter of law that appellant is estopped from relitigating the crucial causation issue. Appellant objected to the motion to take judicial notice. We carried this motion with the case and rule on it now.

■ This Court may take judicial notice of an adjudicative fact for the first time on appeal. *City of Dallas v. Moreau,* 718 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); TEX.R.CIV.EVID. 201(f). However, even if we were to take judicial notice of the federal proceeding, we could not rule on the merits of appellee's issue preclusion argument. In the instant case, issue preclusion was not raised in the trial court as a basis for the summary judgment.

■ Texas procedure clearly requires this court to uphold a summary judgment on appeal only upon one of the grounds relied upon by the trial court. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). Thus, we deny appellee's motion to take notice of an adjudicative fact because it is irrelevant to this appeal.[4]

■ Appellant's first and only point of error complains that appellee failed to establish as a matter of law that there were no issues of fact with respect to any of appellant's legal or factual theories. We agree and reverse and remand.

In reviewing a summary judgment record, this Court must determine whether a disputed fact issue exists that would preclude a summary judgment. *Bayouth v. Lion Oil Co.,* 671 S.W.2d 867 (Tex.1984). Every reasonable inference must be indulged in favor of the nonmov-

---

4. It is not clear whether federal or Texas substantive law controls on the question whether appellant is collaterally estopped from relitigating this issue. *See Eagle Properties, LTD. v. Scharbauer,* 807 S.W.2d 714, 721 (1991). However, in order for appellee to establish that appellant is collaterally estopped from relitigating the causation issue, it must show that the prior proceeding did not deprive appellant of procedural rights available in the state forum. *See Parklane Hosiery, Inc. v. Shore,* 439 U.S. 322, 331 n. 15, 99 S.Ct. 645, 651 n. 15, 58 L.Ed.2d 552

(1979). The trial court should examine whether at least two aspects of the federal action had this effect: 1) the comparative responsibility of all defendants could not be determined in the federal action, and 2) appellant was not afforded the right to a jury trial on the causation issue. In addition, the trial court should examine whether the first aspect of this case will have an unjust effect in the instant case. *See generally* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4426.

ants and any doubt resolved in their favor. *Id.* The question on appeal is not whether the summary judgment proof raises a fact issue with reference to essential elements of plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (1990).

Appellee presents two principal arguments in support of the summary judgment: 1) the evidence established that if any product was used, it was potato whitener, and not First Foods' product, Potato White; and 2) that its affidavits established as a matter of law that sulfites were not added to the fruit salad. In support, appellee presented as summary judgment evidence deposition excerpts from two cooks, Roberto Mangohig and Peregrino Ortiz, who worked at the Officer's Club. They stated that no potato whiteners had been added to the fruit salad. In addition, appellee tendered an affidavit from Brooke Hogan which denied that First Foods sold Potato White to the Navy. Appellant responded with controverting affidavits from Dr. Ronald Simon and Jim Nordhaus. We address appellee's arguments in turn.

Appellee attempts to draw a distinction between potato whiteners and Potato White, and argues that only potato whiteners are implicated in this case. We reject this distinction as it is unsupported by the record.

In the cooks' affidavits they refer to "potato whiteners" as a product used by the Officer's Club to preserve food. Appellee argues that potato whiteners is the brand of preservatives used, and that Potato White was not used. However, appellant presented an affidavit from Jim Nordhaus, the Director of Purchasing for Sysco Corporation. In Nordhaus' affidavit, the context that the phrase "potato whiteners" is used indicates that it is a generic

name for a class of sulfite containing products, and Potato White is the trade name for appellee's product of that kind.[5] Thus, the reference to potato whiteners in the cooks' affidavits does not negate the possibility that Potato White was the product actually used.

Appellee also presents evidence that Potato White was never delivered to the Officer's Club. In support, appellee tenders the affidavit of Brooke Hogan, president of First Foods, which states that First Foods never sold Potato White to the Navy. However, Nordhaus' affidavit, supported by business records, indicates Potato White was sold to the Officer's Club through an intermediary. Thus, appellee failed to establish as a matter of law that Potato White was not used at the Officer's Club.

Appellee's main argument is that the affidavits of the cooks' affidavits establish as a matter of law that no sulfites of any kind had been added to the food at the Officer's Club. In response, appellant argued that the affidavit of Dr. Ronald Simon controverted this evidence and presented some evidence that Potato White was added to the fruit salad and was the cause of death.

In Simon's affidavit, which is reproduced in the appendix, he states that Susan Trapnell was very sensitive to sulfites, and that sulfite ingestion caused her death. His opinion that the sulfites were present in the fruit salad was based on the fact that the reaction time between ingestion of the food and initiation of the fatal asthma attack was three to five minutes. He also stated that none of the other foods on her plate contained the level or type of sulfites necessary to provoke the swift and powerful reaction she experienced. Simon indicated that an asthmatic reaction in three to five minutes was characteristic of fruit preserved with sulfites because the sulfites are not chemically bound to the food, and react very quickly when chewed. The reaction to sulfites in other foods is neither as rapid nor as strong as the reaction to fruit preserved with sulfites because sulfites are

5. Indeed, appellee's brief suggests this interpretation where it states: "Trapnell's 'Summary of Facts' alleges that First Foods conceded that a fact issue existed with regard to the brand or manufacturer of the potato whitener used by the Officer's Club."

chemically bound to such foods. Thus, Simon's opinion as stated in the affidavit, is that Susan's *reaction* to the food eaten at the Officer's Club could only have been caused by ingestion of fruit preserved with sulfites.

Simon's affidavit also stated that in his opinion the lethal dose of sulfites came from the sulfites added to the fruit salad by employees of the Officer's Club. He based this opinion on several facts some of which were included in appellant's summary judgment evidence.

One fact crucial to this opinion was that there was a pattern of sulfite use at the Officer's Club. This was established through the deposition of Peregrino Ortiz, a cook, who stated that potato whiteners were used to preserve fruit and other foods to keep them fresh as the days go by. Significantly, as an additional basis for this conclusion, Simon stated that he had ruled out sulfite poisoning caused by all other foods present that day.

Appellee presents several challenges to the competency of Simon's affidavit. The first objection relates to Simon's opinion that Susan's death was caused by sulfite ingestion. The objection is that he did not state that his opinion regarding cause of death was based on a reasonable medical probability.

■ The affidavit establishes the facts upon which Simon stated his opinion that the cause of death was sulfite ingestion. Specifically, he stated that based on tests he conducted, Susan experienced an asthmatic response when she consumed sulfites. Moreover, he reviewed medical records, sworn statements by witnesses, and other evidence that would be admissible at trial, and stated that this evidence indicated that she experienced a "severe asthmatic reaction" to sulfites in the food. His conclusions are clearly explained and well reasoned from these facts, and concern a fact issue where his knowledge could assist the trier of fact. *See* TEX.R. CIV.EVID. 702. Although he did not state that his opinions were based on a reason-

able medical probability, it is clear from the relevant portions of the affidavit that his conclusion that Susan died from sulfite poisoning is based on a reasonable medical probability and reasonable inferences from the facts stated in the affidavit. Thus, the affidavit presents some evidence of the cause of death and is sufficient to controvert appellee's summary judgment evidence.[6]

■ The second objection to Simon's affidavit is that it is conclusory, and without basis in fact. Conclusory statements unsupported by facts in affidavits do not constitute competent summary judgment evidence. *See Swiderski v. Prudential Property & Cas. Ins.*, 672 S.W.2d 264, 268 (Tex. App.—Corpus Christi 1984, writ dism'd). However, Simon is an expert and qualified to give opinions and state conclusions. Moreover, his affidavit contains facts which would be admissible at trial, and are of the kind used by experts to reach such conclusions. *See* TEX.R.CIV.EVID. 703. These conclusions are reasonable. Thus, his affidavit was not defective because it is conclusory.

The third objection to the affidavit is that it does not comport with the requirements of TEX.R.CIV.P. 166a(c) and *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606 (Tex.1986). RULE 166a(c) and *Schindler* set forth the requirements for the legal sufficiency of an expert's affidavit for the movant on summary judgment. This is not the relevant standard for an expert's affidavit opposing a motion for summary judgment.

In opposing a summary judgment where the movant/defendant's summary judgment evidence negates one element of the plaintiff's cause of action the non-movant must raise a fact issue on that element. This may be accomplished by adducing competent summary judgment evidence controverting the non-movant's summary judgment evidence.

---

6. In addition, we note that appellee has not directed our attention to *any* evidence that Susan Trapnell's death was caused by something other than sulfite poisoning.

The standard by which the non-movant's controverting affidavit is measured is whether it presents some probative evidence of the fact at issue, in this case, cause in fact. Simon's affidavit states the facts upon which his conclusions are based. These facts are those reasonably relied upon by experts in his field. *See* Tex.R. Civ.Evid. 703. These facts support his ultimate conclusion or inference that sulfites were added to the fruit by employees of the Officer's Club and caused Susan Trapnell's death. *See* Tex.R.Civ.Evid. 704. Moreover, even if Simon did not draw this inference, we would be required to do so because this is a summary judgment proceeding, and all reasonable inferences are indulged in favor of the non-movant. *Gonzalez*, at 736. Thus, Simon's affidavit is both competent summary judgment evidence and some evidence of causation.

The fourth objection to Simon's affidavit is that it is ludicrous for him to state that the employees at the Officer's Club added the sulfites to the fruit salad.[7] We disagree. Simon ruled out all other possible causes of the amount of sulfites consumed. The speed and intensity of Susan's reaction indicates that she ate fruit mixed with a sulfite preservative. The employees at the Officer's Club used sulfites to preserve fruit. The sulfites they used were called potato whiteners. The brand of potato whiteners the Officer's Club had on the premises was Potato White, appellee's product. We consider the inference that an Officer's Club employee applied sulfites to the fruit salad which Susan Trapnell ate reasonable, despite appellee's controverting affidavits. *Id.* Thus, summary judgment was improper.

The fifth and sixth objections to Simon's affidavit are that he failed to state he was competent to render an opinion on this subject, and his opinions were not based on underlying facts reflected in the affidavit. As stated above, Simon's opinions were based on the underlying facts, and these facts were those reasonably relied upon by experts in his particular field. Although

Simon did not state that he was competent to testify on this subject, the first part of the affidavit states in great detail his extensive qualifications to render such an opinion. *See* Tex.R.Civ.Evid. 702. Thus, it was not necessary for him to recite that he was qualified to give an opinion on this subject.

All of appellee's objections to Simon's affidavit are meritless. Having found that appellant's summary judgment proof adduced some evidence that ingestion of Potato White caused Susan Trapnell's death, appellee failed to establish as a matter of law that there was no question of material fact on this issue. We therefore REVERSE and REMAND this cause to the trial court for further proceedings.

BENAVIDES, J., not participating.

---

7. At this point it should be noted that the summary judgment evidence provided by appellee was very difficult to controvert. *See* Tex.R.

Civ.P. 166a(c). Simon's affidavit, which rules out all other causes of death, is one of the few conceivable ways to controvert this evidence.