Ricky Eugene DAVIS, Appellant,

v.

Sheryl MANNING, M.D., Appellee.

No. A14–92–00634–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 11, 1993.

Michael G. Matthews, Houston, for appellant.

David Owen Cluck, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a summary judgment granted in favor of Sheryl Manning, M.D. (Dr. Manning), appellee. Ricky Eugene Davis, appellant, brought suit against Dr. Manning for medical malpractice based on her negligence in diagnosis, treatment, and follow-up. The parties filed cross-motions for summary judgment and the trial court granted Dr. Manning's motion based upon no proximate cause and no deviation from the standard of care. Judgment was

entered for Dr. Manning and appellant filed a notice of limited appeal, limiting his appeal to the trial court's grant of the summary judgment based on a defective affidavit, and the court's denial of his cross-motion for summary judgment. We affirm.

On December 29, 1989, Dr. Manning was employed as a contract physician by MEDI-CUS Medical Group, and was filling in for another physician at Sun Belt Industrial and Family Clinic (Sun Belt Clinic). On this date, appellant came to the Sun Belt Clinic for medical treatment complaining of frequent urination, sore throat, cold sweats during the night and dizzy spells. After taking appellant's family history, checking his blood pressure, temperature, heart rate, and lungs, and performing a urinary analysis and a finger stick blood sugar test, Dr. Manning diagnosed appellant as having new onset diabetes mellitus. She prescribed 5 milligrams a day of Glucotrol, a hypoglycemic, and a 1200 calorie a day ADA diet. Appellant was given pamphlets explaining the diet. He was ordered to return in a week for a fasting blood sugar test. On January 5, appellant returned to the clinic, and told the receptionist to tell Dr. Manning the medicine was "making him sick." The receptionist phoned back to Dr. Manning, and reported appellant's complaint. Dr. Manning did not see appellant but had a laboratory technician take his weight, blood pressure, and fasting blood glucose level. His blood sugar level had dropped from 361 to 187. Dr. Manning, concluded that the medication was bringing down appellant's blood sugar level but the level was higher than she wanted appellant to maintain. Thus, she ordered his treatment continued in the manner prescribed, increased his Glucotrol to 10 milligrams a day, and told the nurse to set up a return visit for appellant in two weeks. On January 9 and again on February 12, 1990, appellant, or his grandmother, called in for a refill on his prescription of 10 milligram Glucotrol which Dr. Manning approved.

When Dr. Manning did not personally attend appellant on January 5, appellant assumed this meant the Doctor refused to see him ever again and therefore, he never returned to, or called, the clinic again. On March 30, 1990, appellant went to Doctor's Hospital East Loop Emergency Room complaining of pain in his right knee and lower back, problems with falling, involuntary jerking of arms and legs, dry mouth and frequent urination. He informed the physician he was a diabetic and was on 10 milligrams a day of Glucotrol. Appellant's blood pressure, heart rate, temperature and blood were taken, and a physical assessment was done. The laboratory results from appellant's blood sample revealed his blood sugar level to be 655. At 9:00 a.m., appellant was put on insulin inter-veiniously to bring his blood sugar levels down. At approximately 9:50 a.m., his blood was drawn and his blood sugar was down to 456. The insulin treatment was continued and by 10:30 a.m., appellant was resting comfortably and having fewer muscles spasms. At 11:10 a.m. his blood was drawn again and at 11:57 his blood sugar level was down to 262. Appellant was taken off the insulin and sent to talk to the Hospital dietician about his prescribed 1500 calorie a day ADA diet. Appellant was diagnosed as having diabetes mellitus (decompensated) and right sciatic parasthesia. He was prescribed to continue the 10 milligrams a day of Glucotrol, and to take 800 milligrams of Motrin and follow a 1500 calorie a day ADA diet. Appellant was discharged with instructions to follow-up in two days with an office visit to Dr. Manning.

Instead of following up with Dr. Manning, appellant went back to Doctor's Hospital East Loop Emergency Room on April 2, 1990 with his symptoms worsening. However, the wait was too long so he left and went to the Hermann Hospital Emergency Room. Appellant was admitted to the hospital with a blood sugar level of 840 and diagnosed as having diabetes myoclonus. Appellant was discharged from the hospital on April 10, 1990 and diagnosed as having insulin dependent diabetes mellitus and seizure disorder.

Pursuant to TEX.R.APP.P. 40(a)(4), appellant filed a notice of limited appeal, limiting his appeal to the trial court's grant of the

summary judgment based on a defective affidavit, and the court's denial of his cross-motion for summary judgment. These are the only two issues before the Court in this appeal.

■ In a medical malpractice suit, because the trier of fact must be guided by the opinion testimony of experts, *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex. 1965), a defendant physician can obtain summary judgment based on his or her uncontroverted testimonial evidence if he establishes, as a matter of law, that there exists no genuine issue of material fact as to one or more elements of the plaintiff's cause of action. TEX.R.CIV.P. 166a(c); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Wheeler v. Aldama-Luebbert*, 707 S.W.2d 213, 215 (Tex.App.—Houston [1st Dist.] 1986, no writ). The pertinent portion of TEX.R.CIV.P. 166a(c) states:

> A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

TEX.R.CIV.P. 166a(c).

Appellant, in points of error one, two, and three, attacks the sufficiency of Dr. Manning's affidavit. He alleges the affidavit is not clear, positive, direct, credible or free from inconsistencies and could not have been readily controverted by him. Appellant contends Dr. Manning's affidavit did not address his informed consent cause of action. Further, he complains that Dr. Manning raised for the first time in her affidavit the affirmative defense of "lack of negligence."

■ As an initial matter, there is no such affirmative defense as "lack of negligence." *See* TEX.R.CIV.P. 93, 94. Dr. Manning filed a general denial to appellant's suit based in negligence. Clearly, a general denial to negligence causes of action means a defendant is stating she was not negligent. Thus, appellant was not raising "lack of negligence" in her affidavit for the first time.

■ The appellant correctly sets out the requirements which an interested witness' affidavit must meet to comply with the rules. The affidavit must state: 1) the physician's qualifications; 2) the services performed for the patient/Plaintiff over the treatment period; 3) that the physician met the standard of care; 4) specific denials of each of the allegations of negligence contained in patient/Plaintiff's petition; 5) that her opinion is based upon a reasonable degree of medical probability; and 6) that no act or omission on the physician's part caused any damage to the patient/Plaintiff. *Duncan v. Horning*, 587 S.W.2d 471, 473 (Tex.Civ.App.—Dallas 1979, no writ).

■ Dr. Manning's affidavit stated as follows:

My name is Sheryl Manning, M.D. I'm over the age of eighteen (18) years. I am an adult resident of Houston, Harris County, Texas, and I am fully competent and able to testify herein. I am a doctor of medicine, licensed to practice in Harris County, Texas. I have personal knowledge of all the facts set forth herein and am able to swear, as I do hereby swear, that all said facts and statements contained herein are true and correct. All opinions stated herein are based on reasonable medical probability.

I am a doctor of medicine practicing in Houston, Harris County, Texas. I received my doctor of medicine from the University of Texas health Science Center in Houston in 1987. I have completed one year of residency in internal medicine at the Martin Luther King General Hospital in Los Angeles, California.

Ricky Eugene Davis was first seen by me at Sunbelt Industrial Family Practice Clinic on December 29, 1989. His initial presentation of complaints were of frequent urination which had been present for about one month and a sore throat for two weeks with cold sweats during the night. He further complained of dizzy spells for about one week. He denied

any fever or chills but did complain of general malaise. His family history was positive for diabetes in his father.

On physical examination, Mr. Davis was noted to be in no acute distress. There was some inflammation in the posterior pharynx with exudate. His heart was regular, without murmur, and his lungs were clear to auscultation. A urinalysis was ordered and was positive for sugar as well as ketones. Fingerstick blood sugar was elevated at 361.

My clinical assessment of Mr. Davis on this initial visit was new onset diabetes. I started Mr. Davis on Glucotrol 5 mg. daily and a 1200 calorie ADA diet. I asked Mr. Davis to return in one week for a recheck of his blood sugar.

Mr. Davis returned to the Sunbelt Industrial & Family Practice Clinic on January 5, 1990. His blood glucose was 187 at this visit, a significant improvement. His glucose was not as low as I desired, therefore, I increased his Glucotrol to 10 mg. daily. I requested that he return in two weeks for blood glucose evaluation. Mr. Davis did not return to Sunbelt Industrial & Family Practice Clinic. There were two telephone requests to the Clinic for prescription refills of Glucotrol, one on January 9, 1990, and one on February 12, 1990. Both requests for refills were honored. I never saw Mr. Davis again as a patient because he failed to return to the Clinic.

I am familiar with the applicable standard of care among clinic physicians practicing in Harris County in 1989 and 1990. That standard is a mode or form of treatment which a reasonable and prudent physician would have undertaken under the same or similar circumstances. In my expert opinion, my examination, diagnosis and treatment w[ ]ere in accordance with that standard of care.

I deny that the diagnosis, medical care and treatment rendered by me to Ricky Eugene Davis fell short of the standard of medical care and treatment ordinarily exercised by clinic physicians in this community. On the contrary, I possessed and exercised the degree of skill, care and expertise ordinarily exercised under the same or similar circumstances by other clinic physicians in Houston, Harris County, Texas and in similar communities. That standard is set forth in the above and remaining paragraphs of this Affidavit.

Specifically,

(1) I deny that I was negligent in failing to make a proper medical diagnose of insulin dependent diabetes mellitus. On first visit, the only appropriate designation of type is "new onset diabetes mellitus" which is clearly recorded in the medical record. A diagnosis of insulin dependent diabetes mellitus can only be made with monitored follow-up visits which Plaintiff failed to keep.

(2) I deny that I was negligent in failing to provide Mr. Davis with any instructions regarding the type of diet he should maintain. He was given a copy of a 1200 calorie ADA diet which included exchange lists. This diet has been developed by the American Diebetics Association for the management of diabetes.

(3) I deny that I was negligent in failing to inform Plaintiff that diabetes pills actually undermine the purpose of treating diabetes because they may increase Plaintiff's chances of dying from cardiovascular disease because such information would be incorrect. Untreated diabetes is more likely to cause death than the oral hypoglycemic.

(4) I deny that I was negligent in failing to inform Plaintiff that oral hypoglycemics like Glucotrol probably cause premature death from cardiovascular disease. The warning regarding increased risk of cardiovascular mortality are based on a study involving a different oral hypoglycemic. Additionally, uncontrolled diabetes carries its own risk of cardiovascular complications.

(5) I deny that I was negligent in failing to inform Plaintiff that oral hypoglycemic like Glucotrol are only somewhat effective in lowering blood sugar. In the appropriate circumstances, Glucotrol has been demonstrated to be quite effective when taken properly and used in conjunction with a properly maintained diet.

(6) I deny that I was negligent in failing to inform Plaintiff that insulin was the preferred drug of choice in treating his condition. Such information would have become available only after repeated clinic visits which Plaintiff failed to keep.

(7) I deny that I was negligent in failing to inform Plaintiff that diet is the safest, most effective treatment for the vast majority of adult onset diabetics. While this is true for many diabetics, Plaintiff's blood sugar was at a level that mandated drug therapy as an adjunct.

(8) I deny that I was negligent in failing to inform Plaintiff that the only reason Glucotr[o]l should have been used was if diet alone failed to control Plaintiff's diabetes *and* Plaintiff could not inject insulin. When the diagnosis of diabetes is made, the physician must decide on the best approach. If the blood sugar levels indicate diet plus medication are required, then dietary management alone should not be attempted. There is no medical reason to use Glucotrol because a Plaintiff could not inject insulin.

(9) I deny that no instructions were given to Mr. Davis and that none appear in the medical record regarding the proper use of Glucotrol. The medical record clearly notes that Mr. Davis was initially to take one 5 mg. tablet of Glucotrol by mouth everyday.

(10) I deny that I failed to explain the difference between insulin dependent diabetes mellitus and non-insulin dependent diabetes mellitus to Mr. Davis. At the time of his initial clinic visit, as is my normal practice, I discussed the fact that diabetes is a chronic condition that can be managed with diet alone, diet plus oral hypoglycemia or diet plus insulin. I routinely discuss the different types with all new diabetics so that they will understand the need for medication changes if indicated. I provided Mr. Davis with a brochure prepared by one of the major drug companies which also discusses in detailed layman's terms what diabetes is as well as the different types and how each is managed. This pamphlet was given as a supplement to the oral instructions provided.

(11) I deny that I failed to instruct Mr. Davis about doing regular exercise. In addition to verbal discussion regarding regular exercise, exercise is one topic which is covered in the diabetes pamphlet given to Mr. Davis.

(12) I deny that I refused to see Mr. Davis when he returned to the Sunbelt Industrial & Family Practice Clinic on January 5, 1990. I noted Mr. Davis' lowered blood sugar which was not yet in the range which I desired. I increased his Glucotrol from 5 mg. to 10 mg. I asked him to return in two weeks.

Further, I specifically deny that any act or omission on my part caused any of damages claimed by Ricky Eugene Davis. As a physician practicing in Houston, Harris County, Texas, it is my opinion based upon a reasonable degree of medical probability, that the diagnosis, medical care and treatment rendered by me did not cause any of the injuries allegedly sustained by Ricky Eugene Davis as set out in Plaintiff's Original Petition.

Further Affiant sayeth not.

Dr. Manning's affidavit meets the criteria of Tex.R.Civ.P. 166a(c). The affidavit is clear, positive, direct, credible or free from inconsistencies and could have been readily controverted by him.

Appellant alleges the *Duncan* criteria are not met in the affidavit. He complains that Dr. Manning is not an expert internal medicine and therefore, her opinion is insufficient. Dr. Manning was not practicing as an internal medicine specialist and appellant did not go to see her for treatment from an internal medicine specialist. She was practicing as a clinic physician and has given her expert opinion as such. No more is required by the rules. She set out the services and treatment she gave appellant, stated that she met the standard of care, specifically denied appellant's allegations in his petition, including negligence from failing to inform appellant about the use and alleged side effects of Glucotrol, stated her opinion was based on a reasonable degree of medical certainty, *and that no act or omission by her caused appellant any*

*damages.* Her affidavit meets the *Duncan* criteria.

Once the defendant has negated, as a matter of law, such elements of the plaintiff's cause of action, the plaintiff has the burden to introduce expert testimony to prove that the defendant physician's diagnosis or treatment constituted negligence *which was a proximate cause of the injuries. See Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 782 (1949); *Wiggins v. Cameron,* 763 S.W.2d 434, 435 (Tex.App.— Houston [14th Dist.] 1988, writ denied). Appellant's summary judgment evidence, although controverting whether a "reasonably prudent physician[ ] in Harris County would treat with insulin rather than **GLUCOTROL[,]**" when "a patient presents with a blood sugar of 361[,]" completely failed to address proximate cause. Once the burden shifted to appellant to controvert Dr. Manning's affidavit testimony, he was required to show her diagnosis or treatment was negligent *and proximately caused his injuries.* This appellant failed to do.

Additionally, the affidavits in support of appellant's response and cross-motion for summary judgment were attacked at trial and on appeal by Dr. Manning. The affidavit of Don E. Lewis, a pharmacist and lawyer, is insufficient to establish a physician's standard of care based on a reasonable degree of *medical* probability, and as already discussed it did not address proximate cause.

The other affidavit offered by appellant was by Dr. Howard Grant, M.D. However, Dr. Grant did not sign the affidavit, instead a member of his staff signed his name while Dr. Grant was out of town. Subsequently, appellant filed a signature page signed by Dr. Grant, and an affidavit by the notary public stating Dr. Grant had signed the page in his presence. There is no indication in the record that this document was ever brought to the attention of the trial court, or that the trial court ordered the signature page substituted for the defective signature page on the affidavit. Without deciding whether a party can correct a defective affidavit in this manner, we find the record insufficient to establish the trial court considered the affidavit with the later filed signature page. From the record before us the affidavit considered by the trial court was defective. The trial court properly granted Dr. Manning's motion for summary judgment. We overrule appellant's points of error one, two, and three.

In point of error four, appellant complains the trial court abused its discretion in failing to consider and rule on his cross-motion for partial summary judgment while granting Dr. Manning's summary judgment at an ex parte hearing.

The issue of an ex parte hearing is not properly before this Court as it was not included in appellant's notice of limited appeal. Additionally, there is no evidence in the record to indicate that any ex-parte hearing was conducted by the trial court.

On appeal, appellant may properly complain about the denial of his motion for summary judgment since each party filed a motion for summary judgment, and Dr. Manning's motion was granted while appellant's motion was denied. *See Tobin v. Garcia,* 159 Tex. 58, 63–64, 316 S.W.2d 396, 400 (1958); *Resource Sav. Ass'n v. Neary,* 782 S.W.2d 897, 903 (Tex.App.— Dallas 1989, writ denied). Appellant has the burden of proving that he was entitled to summary judgment as a matter of law and that no genuine issue of material fact exists. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). As the plaintiff in this case, appellant, would be entitled to summary judgment if he could show that, on at least one of his theories, every element to his recovery is so clearly established that there is no substantial issue of fact as to the truth of his contentions and that he has proven his cause of action as a matter of law. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 315 (Tex.1987).

All of appellant's causes of action are based in negligence. In order to prevail on any of these causes of action, appellant must establish every element, including proximate cause, as a matter of law.

As previously stated, appellant's summary judgment evidence did not address the proximate cause element. Further, appellant's affidavits in support of his motion, as discussed above, were defective. Therefore, the trial court was correct in denying appellant's motion for partial summary judgment. We overrule point of error four.

The judgment of the trial court is affirmed.