Martha CEBALLOS, Appellant,

v.

**EL PASO HEALTH CARE SYSTEMS**
d/b/a Sun Towers Hospital, Ana Maria
Medina and Dionicio M. Alvarez, M.D.,
Appellees.

No. 08–93–00380–CV.

Court of Appeals of Texas,
El Paso.

June 23, 1994.

Rehearing Denied Aug. 24, 1994.

Rosalio Munoz, Gage, Beach & Ager, El
Paso, for appellant.

John B. Luscombe, Jr., David S. Jeans,
Kemp, Smith, Duncan & Hammond, Charles
R. Jones, Scott, Hulse, Marshall, Feuille,
Finger & Thurmond, El Paso, for appellees.

Before KOEHLER, LARSEN and
McCOLLUM, JJ.

## OPINION

KOEHLER, Justice.

Appellant Martha Ceballos appeals from an adverse summary judgment in a medical malpractice case involving the death of her mother, Maria Padilla Gallegos, while a patient of Appellees Dionicio Alvarez, M.D., El Paso Health Care Systems d/b/a Sun Towers Hospital, and nurse Ana Maria Medina.

Under the first point of error, we must decide whether, following Appellees' submission of Dr. Alvarez' affidavit establishing treatment in conformance with the relevant standard of care, Appellant's controverting expert affidavits were sufficient to create a question of material fact. We must next determine in response to the second point of error whether Dr. Alvarez' affidavit was sufficient proof to support the summary judgment for all three Appellees. In the third point, we are confronted with the question of whether the trial judge was required to recuse himself on Appellant's motion because of some alleged bias toward Appellant's attorney. Finally, in a presubmission motion, Appellant has moved this Court for leave to amend her notice of intent to appeal and her cost bond on appeal to include all plaintiffs below as appellants.

## STANDARD OF REVIEW

■ To prevail on summary judgment, defendants in a medical malpractice action must establish the following as a matter of law: (1) the applicable standard of care; (2) the treatment and services provided the patient and the reason for that treatment; (3) that the treatment and services complied with the standard of care used by other reasonably prudent health care providers in the same or similar circumstances. *Davis v. Manning,* 847 S.W.2d 446, 449 (Tex.App.—Houston [14th Dist.] 1993, no writ). The health care provider may also prove its right to summary judgment by establishing there was no causal connection between any breach of the standard of care and the injury. *White v. Wah,* 789 S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1990, no writ). The evidence establishing these elements may come from an interested witness, but must be clear, positive and direct, credible

and free from contradictions and inconsistencies, and readily susceptible to controversion. Tex.R.Civ.P. 166a(c).

Once defendants have negated one or more essential elements of plaintiff's cause of action, the burden shifts to nonmovant to produce controverting evidence raising an issue of fact. *Pinckley v. Gallegos,* 740 S.W.2d 529, 534 (Tex.App.—San Antonio 1987, writ denied). The plaintiff is not required to show ability to prevail on the merits of the case, but need only produce evidence raising an issue of fact on the elements negated by movant's summary judgment evidence. *Cloys v. Turbin,* 608 S.W.2d 697, 700 (Tex. Civ.App.—Dallas 1980, no writ). In a medical malpractice case, establishing the right to prevail on summary judgment and negating that right depends, almost without exception, upon expert testimony. *Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1966).

In reviewing the trial court's grant of summary judgment, we follow these well-established rules:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovants will be taken as true; and

3. Every reasonable inference must be indulged in favor of the nonmovants and any doubts resolved in their favor.

*Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ Because it is plaintiff's burden to establish each element of the cause of action, if defendant submits summary judgment evidence disproving at least one element of the plaintiff's case, then the defendant's summary judgment should be granted. *Bradley v. Quality Service Tank Lines,* 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation,* 683 S.W.2d 546, 547 (Tex. App.—El Paso 1985, no writ). In short, a summary judgment entered in favor of a defendant is proper only if the plaintiff could

not succeed on any of the theories pleaded, as a matter of law. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970). Where a summary judgment does not state the grounds upon which it is granted, as here, an appellant must show on appeal that each of the independent grounds alleged in the motion is insufficient to support the summary judgment. *Southerland v. Northeast Datsun, Inc.,* 659 S.W.2d 889 (Tex. App.—El Paso 1983, no writ).

### AFFIDAVIT SUPPORTING SUMMARY JUDGMENT

In support of summary judgment, all Appellees rely solely upon a single affidavit from treating physician Dionicio Alvarez. In that affidavit, Dr. Alvarez details his treatment of decedent Maria Padilla Gallegos following her admission to Sun Towers Hospital on January 19, 1990. Ms. Gallegos had a long history of diabetes with accompanying high blood pressure and kidney failure, for which she had been receiving dialysis. She also had arteriosclerosis, blindness, was apathetic, chronically ill, and weak. When admitted to the hospital, she had been steadily losing weight and could not stand or walk on her own.

Upon hospitalization, Dr. Alvarez did a physical exam and ordered a number of tests, a dietary consult, a neurological consult, and a gastrointestinal consult. His initial orders included a special diet, Procordia for high blood pressure, lab tests, various prescription vitamins and medications, and sliding scale insulin orders. Her blood pressure, blood sugar, fluids, and electrolytes were monitored. He attended her at least once a day, adjusting her treatment as needed.

Dr. Alvarez was not at the hospital when Ms. Gallegos died, in the early morning hours of February 1, 1990. He was called at 3:40 a.m. by a nurse (not nurse Medina), who told him the patient was unresponsive and her breathing was short and labored. He ordered her transferred to ICU, but she died before the transfer. She was pronounced dead at 4:10 a.m.

Dr. Alvarez' affidavit opines that he met the relevant standard of care, and that no standard of care could have prevented Ms. Gallegos' death, which was caused by multisystem diseases. Dr. Alvarez' affidavit makes no mention of the other defendants in this cause.

### AFFIDAVITS RESPONDING TO SUMMARY JUDGMENT

■ In responding to defendants' summary judgment motions, Appellant relies entirely on two affidavits, one from Dr. Frank A. Krumlovsky, a nephrologist practicing in Chicago and teaching at Northwestern University's medical school, and a second from Carolyn R. Williams, a critical care nurse in Monroe County, Michigan, to controvert Appellees' motions for summary judgment and the supporting affidavit of Dr. Alvarez and thus, to raise fact issues. Dr. Krumlovsky's affidavit attempts to controvert the summary judgment evidence by stating in relevant part:

I am familiar with the standard of care for hospitals and medical doctors, including nephrologists, practicing in the United States, including Texas, in 1990, when faced with patients presenting the same condition as MS. GALLEGOS. I am familiar with such applicable standard of care and it is my expert opinion that MS. GALLEGOS' death was caused by the treatment MS. GALLEGOS received from Dionicio M. Alvarez, M.D., Sun Towers Hospital and Ana Maria Medina.

First of all, it is my opinion that MS. GALLEGOS was improperly force fed during her admission to Sun Towers Hospital and this was clearly inappropriate for someone in her condition. Shortly before her death, MS. GALLEGOS was not alert enough to swallow properly and the attending nurse, who at the time I understand was Ana Maria Medina, should not have attempted to force feed her in the manner she did.

It is also my opinion that during her hospital admission, MS. GALLEGOS was seriously and improperly over medicated with drugs, including Prolixin, Elavil, Compazine and Reglan. These drugs share the same side effects and if you combine all the drugs, especially in an elderly woman

such as MS. GALLEGOS, who is at the highest risk of such side effects, adverse side effects may occur. Such side effects include symptoms such as difficulty swallowing, involuntary movements of the tongue, face, mouth and jaw, depression and low blood pressure. In particular, to continue MS. GALLEGOS on the Reglan was totally inappropriate, especially when the condition for which she was prescribed the medication was not evident in MS. GALLEGOS.

I am also of the opinion that Dr. Alvarez and other staff at Sun Towers Hospital failed to properly review the medication MS. GALLEGOS was taking at the time she was admitted to Sun Tower Hospital on January 19, 1990. At the time she was admitted MS. GALLEGOS was taking three different drugs three times a day all of which are capable of causing the same problems she came in with and in view of the negative gastro-intestinal work up, it is quite probable that her admitting problem was due to these drugs, which included Iron, Alucaps and Indocin. It is highly probable that these drugs were causing her presenting symptoms at the time of her admission. These drugs, then in combination with the additional drugs she was given after her admission, including Prolixin, Elavil, Compazine and Reglan, contributed to MS. GALLEGOS death.

I am also of the opinion that the nursing staff at Sun Towers Hospital, which I understand included Ana Maria Medina, failed to properly notify the attending physician or nursing supervisor in a timely manner after there was a change in MS. GALLEGOS' clinical status, which the medical chart indicates began at approximately 1:00 a.m. on February 1, 1990.

In summary, it is my opinion that Dr. Alvarez, Sun Towers Hospital and Ana Maria Medina breached the applicable standard of care relating to MS. GALLEGOS and that such breach was a proximate cause of MS. GALLEGOS' death.[1]

---

1. For a better understanding of the problems inherent therein, Dr. Krumlovsky's entire affidavit is as follows:

*AFFIDAVIT IN SUPPORT*
STATE OF ILLINOIS
COUNTY OF COOK

BEFORE ME, the undersigned authority, on this date personally appeared FRANK A. KRUMLOVSKY, M.D., known to me to be the person whose name is subscribed to the following instrument and, having been by me duly sworn, upon his oath, deposed and states as follows:

My name is FRANK A. KRUMLOVSKY, M.D. I am over the age of eighteen years. I am an adult resident of Cook County, Illinois, and I am fully competent and able to testify herein. I am a doctor of medicine, licensed [to] practice in the State of Illinois and California and am practicing in Cook County, Illinois. I have personal knowledge of all the facts set forth herein and am able to swear, as I do hereby swear, that all said facts and statements contained herein are true and correct. I have never been convicted of any crime. All opinions expressed herein are based on reasonable medical probability.

I am [a] doctor of medicine practicing in the fields of internal medicine and specializing in nephrology. I received my license to practice medicine in Illinois in 1963. I received my license to practice medicine in California in 1965. I received my American Board of Internal Medicine Certification in 1969. I am currently practicing medicine in the State of Illinois. My current hospital appointments include the following: consultant in nephrology, Rehabilitation Institute of Chicago; attending physician, Northwestern Memorial Hospital; consultant in internal medicine, Veterans Administration Research Hospital. I have also been attending physician at Passavant Memorial Hospital and adjunct attending physician, Chicago Wesley Memorial Hospital. I am also currently an Associate Professor of Medicine at Northwestern University Medical School. I have also held the following clinical and research fellowships: clinical fellow in nephrology, Northwestern University Medical School, 1969 to 1970; research fellow in nephrology, Northwestern University Medical School, 1968–1969. I have regional committee assignments in foundations and associations involving kidney disease and heart research. I have also held major committee assignments at Northwestern University Medical School and I continue to hold major committee assignments at Northwestern Memorial Hospital in Chicago, Illinois. I have published extensively in the field of internal medicine and nephrology. A summary of professional background and publications are found in my curriculum vitae, dated 5–14–92, a copy of which is attached to this Affidavit.

I am qualified to render an opinion concerning the care rendered to MARIA GALLEGOS relating to her January 19, 1990 admission to Sun Towers Hospital, El Paso, Texas and the allegations of professional negligence and malpractice against El Paso Health Care Systems, doing business as Sun Towers Hospital and

Ms. Williams, a registered nurse with twelve years experience in critical care, opined the following:

I am familiar with the standard of care for hospitals and nurses practicing in the United States, including Texas, in 1990, when faced with patients presenting the same condition as MS. GALLEGOS. I am familiar with such applicable standard of nursing care and it is my expert opinion that the nursing care which MS. GALLEGOS received while admitted to Sun Towers Hospital was substandard and was in breach of the applicable standard of nursing care and that MS. GALLEGOS' death was caused by such substandard care.

Ana Maria Medina and Dionicio M. Alvarez, M.D., which is the basis of the lawsuit and damages brought by Plaintiffs.

I have had the opportunity to review the medical chart relating to the January 19, 1990 hospital admission of Maria Gallegos. It is my understanding that the medical chart I reviewed was provided by a representative from Sun Towers Hospital.

I am familiar with the standard of care for hospitals and medical doctors, including nephrologists, practicing in the United States, including Texas, in 1990, when faced with patients presenting the same condition as MS. GALLEGOS. I am familiar with such applicable standard of care and it is my expert opinion that MS. GALLEGOS' death was caused by the treatment MS. GALLEGOS received from Dionicio M. Alvarez, M.D., Sun Towers Hospital and Ana Maria Medina.

First of all, it is my opinion that MS. GALLEGOS was improperly force fed during her admission to Sun Towers Hospital and this was clearly inappropriate for someone in her condition. Shortly before her death, MS. GALLEGOS was not alert enough to swallow properly and the attending nurse, who at the time I understand was Ana Maria Medina, should not have attempted to force feed her in the manner she did.

It is also my opinion that during her hospital admission, MS. GALLEGOS was seriously and improperly over medicated with drugs, including Prolixin, Elavil, Compazine and Reglan. These drugs share the same side effects and if you combine all the drugs, especially in an elderly woman such as MS. GALLEGOS, who is at the highest risk of such side effects, adverse side effects may occur. Such side effects include symptoms such as difficulty swallowing, involuntary movements of the tongue, face, mouth and jaw, depression and low blood pressure. In particular, to continue MS. GALLEGOS on the Reglan was totally inappropriate, especially when the condition for which

It is my opinion that during MS. GALLEGOS' hospital admission at Sun Towers Hospital, nursing personnel failed to transfer MS. GALLEGOS to the ICU pursuant to a doctor's order of January 25, 1990.

It is also my opinion that nursing personnel at Sun Towers Hospital, specifically Ana Maria Medina who I understand was the attending nurse at the time, failed to inform the attending physician or nursing supervisor about the clinical change in MS. GALLEGOS' condition which the Hospital chart indicates began at approximately 1:00 a.m. on February 1, 1990. In addition, the Hospital chart indicates a worsening of MS. GALLEGOS' level of conscious-

she was prescribed the medication was not evident in MS. GALLEGOS.

I am also of the opinion that Dr. Alvarez and other staff at Sun Towers Hospital failed to properly review the medication MS. GALLEGOS was taking at the time she was admitted to Sun Tower Hospital on January 19, 1990. At the time she was admitted MS. GALLEGOS was taking three different drugs three times a day all of which are capable of causing the same problems she came in with and in view of the negative gastro-intestinal work up, it is quite probable that her admitting problem was due to these drugs, which included Iron, Alucaps and Indocin. It is highly probable that these drugs were causing her presenting symptoms at the time of her admission. These drugs, then in combination with the additional drugs she was given after her admission, including Prolixin, Elavil, Compazine and Reglan, contributed to MS. GALLEGOS death.

I am also of the opinion that the nursing staff at Sun Towers Hospital, which I understand included Ana Maria Medina, failed to properly notify the attending physician or nursing supervisor in a timely manner after there was a change in MS. GALLEGOS' clinical status, which the medical chart indicates began at approximately 1:00 a.m. on February 1, 1990. In summary, it is my opinion that Dr. Alvarez, Sun Towers Hospital and Ana Maria Medina breached the applicable standard of care relating to MS. GALLEGOS and that such breach was a proximate cause of MS. GALLEGOS' death.

Further Affiant sayeth not.

/s/ Frank A. Krumlovsky, M.D.
FRANK A. KRUMLOVSKY, M.D.

Subscribed and sworn to before me on this 06 day of May, 1993.

/s/ Vicenta C. Mercado
Official Seal
Vicenta C. Mercado
Notary Public State of Illinois
My Commission Exp. Oct. 22, 1993

ness at approximately 2:10 a.m. on February 1, 1990 and at this time, the attending physician or nursing supervisor should also have been contacted and advised.

It is also my opinion that at the time a clinical change in MS. GALLEGOS' condition occurred, at approximately 1:00 a.m. on February 1, 1990, the nursing staff at Sun Towers Hospital, failed to properly check and monitor MS. GALLEGOS' vital signs. The nursing staff also failed to establish an IV line on MS. GALLEGOS after a chemstick reading indicated that her glucose was 40.

In summary, it is my expert opinion that Sun Towers Hospital and Ana Maria Medina breached the applicable standard of nursing care relating to MS. GALLEGOS and that such breach was a proximate cause of MS. GALLEGOS' death.

Neither Dr. Krumlovsky or Nurse Williams had personal knowledge of Ms. Gallegos' treatment; instead, their opinions were based upon reading the medical chart from her final hospitalization. Nonetheless, those records are not attached to the affidavits or anywhere included in the summary judgment evidence.

Under our summary judgment practice, Tex.R.Civ.P. 166a(f) requires that certified or sworn copies of all records or papers referred to in a supporting or opposing affidavit "shall be attached thereto or served therewith." The last sentence of Rule 166a(f) then provides that:

> *Defects* in the *form* of affidavits or attachments will not be grounds for *reversal* unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend. [Emphasis added].

The dissent takes the position that this sentence which specifically limits its applications to reversals applies equally to affirmances; that is, unless the successful movant has specifically pointed out the opposing party's omission of the papers referred to in her controverting affidavit, that defect cannot be relied on as grounds for affirmance and is waived. Cited in support of this holding are two cases: *Ridgway's, Inc. v. Payne,* 853

S.W.2d 659, 662 (Tex.App.—Houston [14th Dist.] 1993, no writ) and *Walkoviak v. Hilton Hotels Corp.,* 580 S.W.2d 623, 627 (Tex.Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). *Ridgway's* cites *Walkoviak*[2] as its only authority for the conclusion that the last sentence of Rule 166a(f) should apply equally to any objections to defects in the form of affidavits or attachments, whether being urged as grounds for reversal or for affirmance of a summary judgment. While the *Walkoviak* Court failed to see the distinction between requiring an objection to a defect in the movant's affidavit by an opposing party seeking reversal and not requiring an objection to the opposing party's affidavit by the movant seeking an affirmance, we can think of at least one distinction. The last sentence of Rule 166a(f) states unequivocally that it applies only to parties seeking reversal. The sentence in exactly the same wording has been in effect for a relatively long period of time. The Rules of Civil Procedure have been amended and modified with some degree of frequency for a number of years. It would have been a simple matter to add "or for affirmance" after "for reversal" if that is what the Supreme Court intended. There may be other distinctions having to do with the respective burdens of the movant and nonmovant and the fact that summary judgment hearings are seldom recorded.

Our disagreement with *Ridgway's* and *Walkoviak's* interpretation of Rule 166a(f) aside, of much greater importance is the fact that those cases do not apply to the deficiencies of Dr. Krumlovsky's affidavit. Dr. Krumlovsky states therein, "I have personal knowledge of all the facts set forth herein and am able to swear, as I do hereby swear, that all said facts and statements contained herein are true and correct[,]" making it obvious that he bases his opinions entirely on his review of the "medical chart relating to the January 19, 1990 hospital admission of Maria Gallegos." A sworn or certified copy of the medical chart, of which he claims personal knowledge and on which he bases his considerable opinions, was not attached. The same is true with reference to Nurse

---

2. At the time *Walkoviak* was published (1979), Tex.R.Civ.P. 166–A(e) included the same provision now appearing in the last sentence of the current Rule 166a(f).

Williams' affidavit in which she expresses her professional opinions based on the medical chart, again neither attached or filed with her affidavit. Compare this defect to *Walkoviak* where the appellee's contention was that the "affidavit was insufficient because it was sworn to only to the best of his knowledge and belief rather than on personal knowledge as required by Rule 166–A(e)." 580 S.W.2d at 626. In *Ridgway's,* the appellee's complaint was that the jurats on the appellant's affidavits were defective. 853 S.W.2d at 662. The failure to attach to, or serve with, Dr. Krumlovsky's and Nurse Williams' affidavits sworn or certified copies of the medical chart or other record referred to therein is not simply a *defect in the form* of his affidavit, but rather is a *defect in the substance* thereof. This is true because there is no way to tell from these affidavits on what specific entries, notations or statements entered on the medical chart they are basing their respective opinions. When the defect is one of substance, the opposing party need not point out the defect because the trial court is not required to give the party offering the affidavit an opportunity to amend. *Bell v. Moores,* 832 S.W.2d 749, 756 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *De Los Santos v. Southwest Texas Methodist Hosp.,* 802 S.W.2d 749, 754–55 (Tex.App.—San Antonio 1990, no writ); *Elam v. Yale Clinic,* 783 S.W.2d 638, 643 (Tex.App.—Houston [14th Dist.] 1989, no writ); *Norcross v. Conoco, Inc.,* 720 S.W.2d 627, 632 (Tex.App.—San Antonio 1986, no writ).

The affidavits of Dr. Krumlovsky and Nurse Williams because of their substantive omissions should not have been, and apparently were not, considered by the trial court. On the other hand, Dr. Dionicio Alvarez' affidavit which was utilized by all three Appellees in their separate motions for summary judgment was sufficient and adequate to establish that the death of Ms. Gallegos was not caused by any acts or omissions on their part. They were therefore entitled to the summary judgments rendered for them by the trial court. We conclude that the controverting affidavits were insufficient to raise any fact issues because they did not meet the requirements of TEX.R.CIV.P.

166a(f). We further conclude that Dr. Alvarez' affidavit was sufficient to support the summary judgment rendered for all three Appellees. We therefore overrule Appellant's Points of Error Nos. One and Two.

### RECUSAL

Plaintiff's Point of Error No. Three concerns the trial judge's refusal to recuse himself from this proceeding. No record of the motion to recuse, or any proceeding or order relating to it, has been brought up on this appeal. The point is waived.

### AMENDMENT OF COST BOND

█ Plaintiffs below were Martha Ceballos, individually and on behalf of the estate of Martha Padilla Gallegos, Fernando Franco Gallegos, and Jacob Mercado Gallegos. The cost bond on appeal, although listing all these plaintiffs in its style, named only Martha Ceballos as appellant. Appellant has moved to amend her notice of intent to appeal and cost bond on appeal, to include all plaintiffs below as appellants.

█ Appeal bonds are to be liberally construed. *Shults v. State,* 682 S.W.2d 260 (Tex. 1984) (per curiam). The filing of a cost bond by any of several proper appellants gives the appellate court jurisdiction over the entire appeal, and would-be appellants who establish that their omission from the cost bond was inadvertent have the right to amend the bond by adding their names to it. *Powell v. City of McKinney,* 711 S.W.2d 69, 70 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Here, however, counsel for Appellant has filed an unverified motion, and no affidavits of counsel or would-be appellants establishing that their omission was a mistake have been included in the record. There is nothing from which we can conclude that omission of the remaining plaintiffs, and Ms. Ceballos in her representative capacity, was indeed a mistake and all plaintiffs intended to appeal. TEX.R.APP.P. 19(d). Nevertheless, the law is clear that we must allow a reasonable time for parties to correct or amend defects or irregularities in cost bonds or other instruments perfecting the appeal. *Grand Prairie Independent School District v. Southern*

*Parts Imports, Inc.,* 813 S.W.2d 499, 500 (Tex.1991) (per curiam). We therefore grant Appellant's motion to the extent that she in her representative capacity, and the other plaintiffs below, will have fifteen days from the date of this opinion to file any amended documents in an effort to perfect this appeal in behalf of all plaintiffs below not included in the original notice and cost bond.

We affirm the order granting the summary judgments in favor of Appellees.

LARSEN, Justice, dissenting.

I respectfully dissent from that portion of the majority opinion sustaining summary judgment in favor of defendants. It is true that Plaintiff failed to present this Court, or the trial court, with the medical records upon which its expert witnesses based their opinions. Plaintiff urges that its experts did not base their affidavits on the hospitalization records of Ms. Gallegos, but rather "on their personal knowledge as experts in their fields and said opinions were made only upon review of the medical charts supplied by Sun Towers Hospital and were not referenced to and did not constitute part of the Summary Judgment Affidavit...." I believe this is an inaccurate reflection of the summary judgment response. Dr. Krumlovsky and Nurse Williams had no personal knowledge of Ms. Gallegos' condition or treatment: their understanding of events was based solely upon the treatment records which plaintiff did not include in her summary judgment response. It is permissible for an expert to base an opinion on such documents. TEX.R.CIV.EVID. 703. Nevertheless "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." TEX.R.CIV.P. 166a(f); *Chandler v. El Paso National Bank,* 589 S.W.2d 832, 835 (Tex.Civ.App.—El Paso 1979, no writ). Plaintiff should have included the relevant medical charts in her summary judgment proof.

I believe it is important, however, that defendants raise this defect for the first time on appeal. They voiced no objection to plaintiff's failure to include the medical records in the summary judgment proof in the trial court. Defendants each objected to plain-

tiff's expert affidavits as "vague, indefinite, and conclusory," but they did not protest plaintiff's failure to submit the medical records to the court. In addition to requiring that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached ...," the summary judgment rules state:

> Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend. TEX.R.CIV.P. 166a(f).

That procedure was not followed here, and I believe that the rule is equally applicable to summary judgment movants urging us to affirm a judgment, as it is to parties seeking a reversal. *Ridgway's, Inc. v. Payne,* 853 S.W.2d 659, 662 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Walkoviak v. Hilton Hotels Corp.,* 580 S.W.2d 623, 627 (Tex.Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). I do not agree that omission of underlying documents upon which opinions are based is a defect which can be raised for the first time on appeal. Summary judgment should not rest solely upon plaintiff's failure to include the medical records in her response where defendant made no specific objection to the omission and plaintiff was afforded no opportunity to remedy the defect.

Moreover, I believe the majority is mistaken in its conclusion that expert affidavits opposing summary judgment must meet the same strict criteria as an expert's affidavit supporting summary judgment. The non-movant's controverting affidavit is adequate if it presents some probative evidence of the fact at issue. *Trapnell v. John Hogan Interests, Inc.,* 809 S.W.2d 606, 611 (Tex.App.—Corpus Christi 1991, writ denied). So long as the expert's conclusions are based on facts reasonably relied upon by experts in that field that would be admissible at trial, and the expert raises fact question on those issues movant seeks to disprove, such an affidavit will defeat summary judgment. *Id.*

I conclude that plaintiff's affidavits meet this criteria. Although Dr. Krumlovsky does not set forth a standard of care for every aspect of Ms. Gallegos' treatment, he does state a relevant standard of care for those

aspects of the treatment which he concludes were deficient: overmedication, failure to rule out drug toxicity upon admission, and failure to timely call a physician or supervisor when the patient's condition deteriorated. This court has previously held that summary judgment in favor of a defendant doctor was sufficient where the supporting affidavit was uncontroverted and where it simply made the conclusory statement that affiant was familiar with the standard of care and defendant doctor met that standard. *Smith v. Ponton,* 855 S.W.2d 849, 852 (Tex.App.—El Paso 1993, no writ). To require more of the non-movant in a summary judgment proceeding than this Court has required of a movant doctor is most arbitrary. I reject such a double standard.

Finally, I note that the affidavit of Dr. Alvarez is completely silent as to the standard of care and acts or omissions of defendants Sun Towers and Ana Maria Medina. Dr. Alvarez was not present the night Ms. Gallegos died. His affidavit does not even mention nurse Medina's name. I do not agree that this affidavit establishes those two defendants are not liable as a matter of law, in the face of expert opinions that the nursing services received by Ms. Gallegos did not meet the relevant standard of care.

All defendants rely heavily upon Dr. Alvarez' conclusion that Ms. Gallegos suffered from end stage renal disease, other multisystem diseases, and died as the result of those conditions, "[g]iven her condition and past medical history, no applicable standard of care could have prevented her death." Thus, all three defendants argue, they established that Ms. Gallegos' death was not caused by any act or omission on their part, and they were all entitled to summary judgment for that reason. I believe, however, that plaintiff's controverting affidavits create a fact issue on causation. I would find that it was error for the trial court to grant summary judgment to these defendants. I would sustain plaintiff's Points of Error One and Two, and remand the case to the trial court for further proceedings.