Davis v. American Leasing 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00637-CV







Comprehensive Leasing Corporation; Gaylan Davis; and Tony Davis, Appellants



v.



American Network Leasing Corporation, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 475,109, HONORABLE JERRY DELLANA, JUDGE PRESIDING







 Appellants Gaylan and Tony Davis appeal from a summary judgment rendered in
favor of appellee American Network Leasing Corporation ("American"). The Davises contend
that the district court erred in granting summary judgment for American and in awarding
American attorney's fees and expenses. We will affirm the trial court's judgment.





BACKGROUND


 In February 1987, American and Comprehensive Leasing Corporation
("Comprehensive") executed a partnership agreement to lease equipment. Under the agreement,
American held a ninety-nine percent partnership interest and was to contribute ninety-nine percent
of the partnership's capital. Comprehensive held a one percent partnership interest and was to
manage partnership leases by invoicing lessees and handling collection of delinquent accounts. 
American was to receive ninety-five to ninety-seven percent of the lease proceeds and
Comprehensive was to receive three to five percent. Gaylan Davis was president and sole
shareholder of Comprehensive; her husband, Tony Davis, was Comprehensive's general manager. 
Between February 12, 1987 and February 7, 1990, the partnership purchased and leased
approximately $40,000,000 worth of equipment.

 Under a separate agency agreement, Comprehensive agreed to serve as the
partnership's agent in the acquisition of leases in return for a "lease origination fee" on every lease
acquired. Comprehensive also guaranteed the performance of lessee rent obligations; it agreed
to make timely payments to the partnership for all leases, regardless of whether it had received
payment, and it agreed to buy back delinquent leases. Each Davis signed a personal guaranty for
Comprehensive in the event it defaulted on its payment obligations under the partnership and
agency agreements. 

 American alleges that during the summer and fall of 1989, Comprehensive became
delinquent in remitting American's portion of rental payments. Comprehensive requested an
accounting by an independent CPA firm to determine the correct amount owed to American, but
the accounting did not occur. In any event, Comprehensive failed to tender any payment to
American in November 1989. American notified Comprehensive on November 21, 1989, that
failure to pay amounts allegedly due by November 24 would constitute an "event of default"
entitling American to exercise all remedies set forth in the partnership agreement.

 On November 22, 1989, Comprehensive filed suit seeking an injunction against
American's takeover of the lease portfolio. American filed a counter-claim alleging
Comprehensive's breaches of contract and fiduciary duty. American also filed applications for
a temporary restraining order and a temporary injunction. The district court denied
Comprehensive's requested temporary injunction and ordered American's takeover of the lease
portfolio. On February 7, 1990, American terminated its partnership with Comprehensive. On
March 13, 1990, American amended its counter-claim to add the Davises as defendants, asserting
claims based on their personal guaranties and breaches of fiduciary duty.

 As the lawsuit progressed, both Comprehensive and Tony Davis failed to comply
with rules of discovery and court orders. Consequently, on June 26, 1990, the trial court ordered
sanctions (the "Sanctions Order") striking the pleadings, claims, and defenses of Comprehensive
and Tony Davis and deeming admitted all allegations made against them in American's amended
counter-claim. Comprehensive then filed a petition for bankruptcy and removed the case to
federal court. The bankruptcy court severed and remanded American's claims against the Davises
to the Travis County district court. On June 6, 1991, American obtained an interlocutory
judgment by default against Tony Davis.

 American filed a motion for summary judgment on July 16, 1992, which addressed
Gaylan Davis's liability and American's entitlement to damages from both the Davises. After a
hearing, the court granted American's motion for summary judgment and awarded American
damages of $14,520,401.25, court costs and interest. The Davises appeal the trial court's
judgment, asserting seven points of error.



DISCUSSION


I.  Summary Judgment

 A movant for summary judgment must establish that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law. Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548 (Tex. 1985). All evidence favorable to the nonmovants
will be taken as true; every reasonable inference must be indulged in favor of the nonmovants and
any doubts resolved in their favor. Id. at 548-49.

 Both the movant and nonmovants must present the issues and arguments upon
which they rely in their respective summary judgment motions and responses to the trial court. 
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993). The movant meets
its burden by providing summary judgment evidence conclusively proving as a matter of law each
element of the legal theory on which it seeks recovery. City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 678 (Tex. 1979). The nonmovants' presentment of proof of existing fact
issues will defeat the movant's right to summary judgment. Id. at 679. The non-movants may
also avoid summary judgment by raising a material fact issue as to each of the elements of their
asserted affirmative defenses. Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Pentad
Joint Venture v. First Nat'l Bank, 797 S.W.2d 92, 95 (Tex. App.--Austin 1990, writ denied).

 In their first and second points of error, the Davises argue that the trial court erred
in granting American's motion for summary judgment. (1) They contend that genuine issues of
material fact exist as to American's entitlement to any relief pursuant to the Davises' guaranty
agreements.

 A guarantor's liability is measured by the principal's liability. Hercules
Exploration, Inc. v. Halliburton Co., 658 S.W.2d 716, 724 (Tex. App.--Corpus Christi 1983, writ
ref'd n.r.e.). Tony Davis's liability as guarantor had been established through the Sanctions
Order. (2) To prove Gaylan Davis's liability as guarantor, American had to produce summary
judgment evidence establishing Gaylan Davis's execution of a guaranty of Comprehensive's
obligations, Comprehensive's breach of its obligations, Comprehensive's liability for its breach,
and American's damages resulting from Comprehensive's breach.

 The summary judgment record contains a guaranty agreement signed by Gaylan
Davis, (3) as well as the Sanctions Order establishing American's allegations against Comprehensive. 
The Sanctions Order provided that



4. All facts alleged by American in its Second Amended Counterclaim and
Applications for Temporary Restraining Order and Temporary Injunction
herein against Comprehensive . . . shall be taken as established for the
purposes of this action; . . . .


 . . . . 


6. Comprehensive . . . [is] hereby precluded from raising any matters in defense
and from otherwise opposing or defending against any of the claims asserted
against [it] . . . by American herein . . . .


7. American shall be permitted to take a judgment by default against
Comprehensive . . . . 



(Emphasis added). Thus, the summary judgment evidence established Comprehensive's liability
to American and established Gaylan Davis's guaranty of Comprehensive's obligations.

 Responding to American's summary judgment evidence, the Davises contend
Gaylan Davis executed a second guaranty, which replaced and superseded the first. This
contention is in the nature of an affirmative defense: Gaylan Davis admits the existence of the
first guaranty but attempts to be released from liability by alleging the existence of a second
agreement. She argues that because the second guaranty may differ from the first, it could
constitute a material alteration discharging her liability under the first agreement. Her contention
fails.

 When nonmovants assert an affirmative defense in their response to a motion for
summary judgment, they must present competent summary judgment evidence sufficient to raise
a fact issue on each element of the affirmative defense in order to avoid summary judgment. 
Brownlee, 665 S.W.2d at 112. The Davises have neither offered the alleged second guaranty as
summary judgment proof nor alleged that the second guaranty materially altered the first. Rather,
they contend the second guaranty might have differed from the first in such a way that it
discharged Gaylan Davis's liability under the first agreement. Speculation and conclusions, as
opposed to "factual matters such as the time, place, and exact nature of the alleged modification,"
are insufficient to raise an issue of fact and will not preclude summary judgment. Id. (holding that
statement alleging actual modification to previous contractual obligation, without more factual
evidence, was legal conclusion and insufficient to raise fact issue to avoid summary judgment). 
Moreover, the execution of a later guaranty does not automatically discharge a guarantor's
obligations under the first. See Federal Deposit Ins. Corp. v. Attayi, 745 S.W.2d 939, 947 (Tex.
App.--Houston [1st Dist.] 1988, no writ); Warner v. First Nat'l Bank, 369 S.W.2d 651, 652-53
(Tex. Civ. App.--San Antonio 1963, no writ) ("For a guarantor to be released from liability by a
subsequent guaranty, it must appear that the later guaranty was intended and accepted as a
substitute for the former . . . .").

 The Davises additionally argue that the trial court erred in granting summary
judgment to American because genuine issues of material fact exist regarding the amount of
damages, if any, for which the Davises are liable under their personal guaranties. The Davises
contend that the affidavit of John A. Cawyer, American's supervisor of financial analysis, failed
to establish the amount of American's damages and that the affidavits of T. Hardie Bowman, Ken
Messner, and Gaylan Davis controvert Cawyer's affidavit, clearly creating a genuine issue of
material fact regarding damages. We disagree.

 Cawyer stated in his affidavit that American "expected" the sum of $13,243,595
from Comprehensive as of April 30, 1992. The Davises argue that this statement is legally
insufficient to form the basis of a damage award because Cawyer did not also aver that the amount
"expected" was accurate or that the "expected" payment had not been received. Contrary to the
Davises' contentions, Cawyer's affidavit indicates that the "expected" payment had not been
received; Cawyer stated that his data "reflects the amount of cash expected from Comprehensive
(i.e. the amount of the lease proceeds that [Comprehensive] should have paid American under the
Partnership and Agent Agreements) and the actual cash received by American." (Emphasis
added).

 Cawyer's affidavit details his calculation of Comprehensive's debt from American's
monthly bank deposit reports. The reports indicate the percentage of rent due American under
each lease--the sum American "expected." The reports also show the funds actually deposited with
American by Comprehensive--the sums American "received." The difference between amounts
expected and amounts received equals Cawyer's calculated sum owed by Comprehensive or its
guarantors to American under the partnership and agent agreements. We conclude that Cawyer's
affidavit and accompanying exhibits constitute competent summary judgment evidence establishing
American's damages.

 The Davises attempt to controvert Cawyer's affidavit by claiming entitlement to
an offset against the amount due American. They allege American is unfairly claiming payment
from Comprehensive for leases sold to American's financing source, Receivables Capital
Corporation ("RCC"). (4) However, Barbara Luzzato, senior vice-president of American until
March 31, 1992, testified to the following by affidavit:



None of the leases involved in the . . . [RCC] [t]ransaction are leases giving rise
to American's claims in this action. American is suing the Davises as guarantors
of Comprehensive's obligations, and Comprehensive's guaranty obligations do not
extend to leases not in default. . . . [N]o lease in default was involved in the . . .
[RCC] [t]ransaction. 



(Emphasis added). The Davises have failed to present any summary judgment evidence
controverting Luzzato's statement or establishing that leases in default were involved in the RCC
transactions. (5)

 The Davises further attempt to controvert American's evidence of damages with
affidavit statements from Bowman, Messner, and Gaylan Davis. Bowman, Comprehensive's chief
financial officer from August 20, 1989 to June 30, 1990, testified that Comprehensive's past lease
payment delinquencies were "minuscule" when compared to the amount claimed due by Cawyer. 
He stated that American's accounting system and records on partnership leases were "fraught with
errors" and he "strongly disagree[d]" that the sum owed was $13.9 million. Messner, a private
consultant employed by Comprehensive in October 1989 to compare American's database with
Comprehensive's, reported in a memorandum attached to his affidavit that his comparison
uncovered "several thousand errors." The report attached to Messner's affidavit states that some
of these errors directly contributed to the amount American's bank deposit reports showed
Comprehensive owed. Gaylan Davis avers that after accounting discrepancies were uncovered,
she offered to pay all amounts rightfully owed as determined in an accounting by a Big Eight
accounting firm; this accounting never took place.

 Affidavits are competent summary judgment evidence if they are made on personal
knowledge, set forth facts admissible in evidence, and show affirmatively that the affiant is
competent to testify to the matters stated therein. Brownlee, 665 S.W.2d at 112. Affidavits
consisting of legal conclusions are not competent summary judgment evidence to raise fact issues. 
Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991); Brownlee, 665 S.W.2d at 112; Mercer v.
Daoran Corp., 676 S.W.2d 580, 583 (Tex. 1984). Neither are statements of belief rather than
fact. Trans-Continental Fin. Corp. v. Summit Nat'l Bank, 761 S.W.2d 575, 577 (Tex. App.--Fort
Worth 1988, no writ). Affidavit statements must be so direct and unequivocal that perjury can
be assigned against the affiant if the statements are untrue. Id.

 The statements offered by the Davises raise no fact issue. Bowman's affidavit fails
to present facts identifying the alleged accounting system errors or supporting his belief that
Comprehensive owed a lesser sum than that established by American. His affidavit merely
presents his statement of disagreement with Caywer's sum and his conclusion that American's
accounting system was "fraught with errors." As such, the statements in Bowman's affidavit do
not constitute competent summary judgment evidence to controvert American's evidence. See
Snider, 808 S.W.2d at 55; Brownlee, 665 S.W.2d at 112.

 Messner's statements in the documents accompanying his affidavit indicate "several
thousand errors were identified" when the databases of Comprehensive and American were
compared. The report attached to Messner's affidavit states that over fifteen hundred leases listed
in American's records lacked cross-references matching leases in Comprehensive's records; that
American had failed to timely pay lease origination fees to Comprehensive on over eighteen
hundred leases; that other errors in stream fees, equipment costs, and customer lease payments
had been identified; and that these errors directly contributed to the difference in the amount the
two companies thought Comprehensive owed American. However, neither Messner's report nor
his affidavit quantifies the alleged errors or indicates how any error contributed to the amount
owed. Furthermore, at no point does Messner's affidavit or report show that Comprehensive
owed less than the judgment amount. Even if we attribute all of the several thousand unquantified
errors to American and assume that the errors negatively impacted the sums Comprehensive owed
to American in 1989, Messner's affidavit and report contain only conclusory statements and
present nothing to controvert the accuracy of Cawyer's calculations at the time American
submitted its motion for summary judgment in 1992.

 Gaylan Davis's affidavit fails to raise a genuine issue of material fact concerning
proof of damages; her offer to pay all amounts rightfully due and her request for an accounting
have no bearing on the issue. The affidavit statements and offset arguments submitted by the
Davises fail to controvert the proof American offered on the amount due under the Davises'
guaranties. We overrule the Davises' first and second points of error.

 In their sixth point of error, the Davises contend that the trial court erred in
awarding damages for American's payment of sales, use, and property taxes on the partnership's
property because the award was not based on competent evidence. In particular, the Davises
contend that the affidavit of American's property tax manager, Wendy Tangman, contained
inadmissible hearsay. Assuming without deciding that the affidavit contained inadmissible
hearsay, we conclude the Davises waived the hearsay objection by their failure to obtain a ruling
from the trial court on this objection. See Eads v. American Bank, N.A., 843 S.W.2d 208, 211
(Tex. App.--Waco 1992, no writ).

 The Davises further contend that summary judgment evidence on this issue was not
competent because the property tax bills should have been attached to Tangman's affidavit and
because Tangman used an estimate in her calculations. These contentions are meritless. In her
affidavit, Tangman summarized the voluminous tax records previously available to the Davises,
Tex. R. Civ. Evid. 1006, and stated the amount American paid on behalf of the partnership for
1989 property taxes. We overrule the Davises' sixth point of error.



II.  Affirmative Defenses

 In points of error four and five, the Davises argue that the trial court erred in
granting summary judgment in favor of American because genuine issues of material fact exist as
to (1) Gaylan Davis's affirmative defenses of equitable estoppel, fraud, breach of fiduciary duty,
breach of the duty of good faith and fair dealing, unclean hands, offset, tortious interference,
breach of contract, failure to mitigate damages, and negligence; and (2) whether a defect of parties
existed.

 The Davises assert that Gaylan Davis, as a guarantor, may raise affirmative
defenses available to the obligor if the obligor is included, as Comprehensive was, in the lawsuit
against the guarantor. See Hart v. First Fed. Sav. & Loan Ass'n, 727 S.W.2d 723, 725 (Tex.
App.--Austin 1987, no writ) (noting equity allows guarantor to assert debtor's cause of action as
a set-off of claim against it if guarantor and debtor are joined in suit). We assume all of Gaylan
Davis's affirmative defenses thus relate to her liability as guarantor. However, because
Comprehensive's liability was conclusively established by the Sanctions Order, Gaylan Davis, as
guarantor, is now estopped to assert Comprehensive's defenses to liability. A guarantor in control
of her principal is estopped to relitigate the principal's liability once established. Mayfield v.
Hicks, 575 S.W.2d 571, 574 (Tex. Civ. App.--Dallas 1978, writ ref'd n.r.e.).



[A] judgment against the principal obligor conclusively establishes the extent of the
principal's liability with respect to a guarantor, if that judgment is obtained in a
suit of which the guarantor had full knowledge and an opportunity to defend. . . . 
[This rule applies] where the primary obligor's liability had been established in an
action where the guarantor had an opportunity to defend but either did not do so
or did so unsuccessfully . . . . [B]efore collateral estoppel applies, the opportunity
to defend must be such that the guarantor can actually control the suit with respect
to any defenses including those available to the primary obligor.



Id; see also Trinity Universal Ins. Co. v. Briarcrest Country Club Corp., 831 S.W.2d 453, 455
(Tex. App.--Houston [14th Dist.] 1992, writ denied) (applying Mayfield holding). Gaylan Davis
has been involved in the litigation against Comprehensive since the filing of the original suit. As
president of Comprehensive, she could control the assertion and prosecution of Comprehensive's
defenses. Gaylan Davis cannot now assert more defenses when Comprehensive's liability has
been established by court order.

 Even assuming Gaylan Davis may assert additional defenses on behalf of
Comprehensive, she has failed to present sufficient evidence to preclude summary judgment. One
who relies on an affirmative defense to defeat a motion for summary judgment has the burden to
come forward with competent summary judgment evidence sufficient to raise a genuine issue of
material fact on each element of an affirmative defense. Brownlee, 665 S.W.2d at 112. Gaylan
Davis has failed to show how statements in her affidavit raise fact issues on each element of even
one of the affirmative defenses she suggests. We overrule the Davises' fourth point of error.

 In their fifth point of error, the Davises contend that the trial court erred in
rendering summary judgment because a genuine issue of material fact exists with respect to a
defect of parties. The Davises claim that RCC should have been joined and that the trial court
erred in granting summary judgment in its absence. The Davises cite no authority in support of
this point of error. A brief must include page references to the record, citation of authorities
relied upon, and a discussion of the facts to support the point in issue. Tex. R. App. P. 74(f). 
The Davises have waived their fifth point of error; accordingly, we overrule it. Trenholm v.
Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983); City of Alvin v. Public Util. Comm'n, 876 S.W.2d
346, 366 (Tex. App.--Austin 1993, writ granted w.r.m.).

 The Davises argue in their third point of error that the trial court erroneously
granted summary judgment based on claims against Gaylan Davis for fraud, conversion, and other
torts, and erroneously awarded damages for those claims, because genuine issues of material fact
exist as to Gaylan Davis's liability for those claims and as to American's damages. When, as in
the instant case, the order granting summary judgment does not specify the basis or theory upon
which it is granted, the summary judgment must be affirmed on any meritorious theory of
recovery. Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989); Lochabay v.
Southwestern Bell Media, Inc., 828 S.W.2d 167, 170 (Tex. App.--Austin 1992, no writ). We have
already determined that the trial court properly granted summary judgment because both Tony
Davis and Gaylan Davis are liable to American under their personal guaranties; accordingly, we
may not reverse this case for improper grant of summary judgment under this point of error. 
Moreover, American states in its brief that it treated any non-contractual losses suffered by alleged
misconduct of the Davises and Comprehensive as subsumed within the amount due under the
Davises' personal guaranties. We overrule the Davises' third point of error.



III.  Award of Attorney's Fees

 In their seventh point of error, the Davises contend the trial court erred in awarding
attorney's fees and expenses to American because a genuine issue of material fact exists as to the
reasonableness and necessity of the fees and because American is not entitled to summary
judgment on the liability and damage issues. Since we have concluded that American is entitled
to summary judgment based on the guaranties, we address this point only to determine whether
a fact issue remains regarding the reasonableness of American's requested attorney's fees and
expenses.

 American submitted the affidavits of its attorneys, Sabrina L. Krakauer and Anne
Shuttee. The affidavit of an attorney representing the claimant is expert testimony that will
support an award of attorney's fees in a summary judgment. Tesoro Petroleum Corp. v. Coastal
Ref. & Mktg., Inc., 754 S.W.2d 764, 767 (Tex. App.--Houston [1st Dist.] 1988, writ denied). A
summary judgment may be based on the uncontroverted affidavits of expert witnesses "if the
evidence is clear, positive and direct, otherwise credible and free from contradictions and
inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c).

 Krakauer states in her affidavit that she was a licensed Texas lawyer and a partner
in her law firm; she and several colleagues had worked on various aspects of the case; litigation
took place in both Travis County district court and bankruptcy court; and the requested fees and
expenses were reasonable and customary in Travis County. Krakauer listed the specific tasks
handled by attorneys, paralegals, and law clerks at her firm, and averred that all the listed
activities were "necessary to the prosecution of th[e] action on behalf of American." Shuttee
stated in her affidavit that she was a licensed Texas lawyer and in-house counsel for American's
parent corporation; she and a paralegal had worked on various aspects of the case; and her
requested fees and expenses were not only reasonable but also considerably less than the
customary rates charged in Travis County. We conclude that American's expert witness affidavits
comport with the requirements of Rule 166a(c) and established the reasonableness of the attorney's
fees award.

 To avoid the award of attorney's fees to American, the Davises had to present
competent summary judgment evidence controverting that of American. Tex. R. Civ. P. 166a(c)
(permitting summary judgment based on uncontroverted expert witness affidavits). To do so, the
Davises presented the affidavit of their expert on attorney's fees, Hubert Gill. See American 10-Minute Oil Change v. Metropolitan Nat'l Bank-Farmers Branch, 783 S.W.2d 598, 602 (Tex.
App.--Dallas 1988, no writ) (filing of affidavit by nonmovant contesting reasonableness of
movant's affidavit on attorney's fees can create fact issue). In a summary judgment proceeding,
the affidavit of an opposing expert witness must contain a statement of the facts on which the
expert opinion is based. Trapnell v. John Hogan Interests, Inc., 809 S.W.2d 606, 610 (Tex.
App.--Corpus Christi 1991, writ denied). These facts must be of the kind used by experts to reach
such conclusions. Tex. R. Civ. Evid. 703; Trapnell, 809 S.W.2d at 610. Any legal conclusions
in the affidavit must be reasonable and supported by the facts offered by the expert. Trapnell, 809
S.W.2d at 610.

 Gill stated by affidavit that he was unable to determine if the work of Krakauer and
others at her firm was unnecessary or duplicative; that "it has not been shown that [American] is
actually responsible for payment of [Shuttee's] bill," implying that American may not recover
attorney's fees for work of in-house counsel; and that it is impossible to determine if the hours
American's counsel worked on Comprehensive's bankruptcy proceedings were fair, reasonable,
or even applicable to issues in the present case.

 Gill's statements do not support his ultimate conclusion that American's requested
legal fees and expenses were excessive. Gill does not indicate any duplicative or unnecessary
work completed and does not controvert the proof that the work was reasonable and necessary. 
Gill's implication that American cannot recover attorney's fees for work of in-house counsel
conflicts with established Texas law. See Tesoro Petroleum, 754 S.W.2d at 766-67 (allowing
recovery of attorney's fees for work of in-house counsel). Gill's statement about the impossibility
of determining the reasonableness of the number of hours American's counsel worked on
Comprehensive's bankruptcy case does not controvert the guaranty agreements included in
American's summary judgment evidence entitling American to recover from the Davises all
attorney's fees American incurred by reason of Comprehensive's default on its payment
obligations to American. The guaranties thus cover fees American incurred in pursuit of its
claims against Comprehensive in bankruptcy court. Gill even fails to suggest what, in his
experience, an award of attorney's fees should properly be based upon. As such, even when we
indulge all reasonable inferences in favor of the Davises, Gill's conclusory affidavit fails to
controvert the reasonableness of the attorney's fees and expenses established by American.

 The Davises' contend that $23,589 in expenses is unreasonable because no
explanation for these fees was given. This issue was not raised before the trial court. The
Davises may not now assert that the trial court erred in awarding those expenses to American. 
Tex. R. Civ. P 166a(c) ("Issues not expressly presented to the trial court by written motion,
answer or other response shall not be considered on appeal as grounds for reversal."). We
overrule the Davises' seventh point of error.


 Having overruled all of the Davises' points of error, we affirm the judgment of the
trial court.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: March 29, 1995

Do Not Publish 

1.   Both points of error state that the trial court erred in "awarding damages" against
the Davises, but in effect, the argument of the points goes to the granting of the summary
judgment.
2.   The Davises cannot contest the liability of Comprehensive or Tony Davis because it
was established in the Sanctions Order. American only had to prove damages to recover
against Tony Davis. Nevertheless, the Davises' first point of error asserts that the trial
court erred in awarding damages against Tony Davis since a genuine issue of material
fact exists as to whether American is entitled to relief under his guaranty agreement. The
Davises neither argue nor cite any authority in support of this point. They have therefore
waived the point of error as to Tony Davis. Trenholm v. Ratcliff, 646 S.W.2d 927, 934
(Tex. 1983); see also Tex. R. App. P. 74(f) (requiring argument to include "authorities relied
upon as may be requisite to maintain the point at issue").
3.   The guaranty is dated February 12, 1987; the handwritten date on the document
indicates that it was signed on February 11, 1987. It is undisputed that Gaylan Davis
signed this guaranty.
4.   In 1989, American agreed to receive funds in exchange for the transfer to RCC of
lease receivables. In late 1990, after terminating its partnership with Comprehensive in
February 1990, American transferred some lease receivables from the former partnership
to RCC. 
5.   The Davises also argue their entitlement to an offset by claiming Comprehensive is
owed a percentage of the monies American received for lease transfers to RCC. 
However, the partnership did not exist at the time of the lease transfers; Comprehensive
cannot collect proceeds from a non-partnership transaction. While American transferred
some lease receivables from other partnerships to RCC in 1989, the record indicates that
no lease receivables from the Comprehensive partnership were involved.